# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA**,** | : | CASE NO. 5:10CR0216 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE LESLEY WELLS |
| vs. | : | |
| | : | |
| MITCHELL FROST, | : | **DEFENDANT'S SENTENCING** |
| | : | **MEMORANDUM** |
| | : | |
| Defendant. | : | |

Defendant Mitchell Frost presents the following Memorandum for this Court's consideration in fashioning an appropriate sentence at defendant's sentencing hearing, presently scheduled for November 4, 2010.

Respectfully submitted,

s/ *Carlos Warner*
CARLOS WARNER (#0068736)
Assistant Federal Defender
Akron Centre Plaza
50 S. Main Street, Ste. 700
Akron, OH 44308
Phone: 330-375-5739 - Fax: 330-375-5738
E-mail: carlos_warner@fd.org

*MEMORANDUM*

**A.**     **_Introduction_**

Defendant Mitchell Frost respectfully requests that this Honorable Court for a sentence of five years probation in this case, as permissible under 18 U.S.C. §3561(a)(1-3) and (c)(1).  The basis for his sentence, which would represent a variance from the guideline range of 18 - 24 months, is outlined below under discussion of the Sentencing Reform Act, part of which is codified at 18 U.S.C. §3553(a).

**B.**     **_Sentencing Discretion_**

District court judges have great discretionary power to impose sentences that are not greater than necessary to satisfy the statutory purposes of sentencing.  *Gall v. United States*, 552 U.S. 38 (2007);  *Kimbrough v. United States*, 552 U.S. 85 (2007);  *Rita v. United States*, 551 U.S. 338 (2007);  *United States v. Booker*, 543 U.S. 220 (2005).  Both the Supreme Court and the sentencing statute instruct district courts to impose the *lowest* sentence that will achieve the four  purposes of sentencing:   justice;   deterrence; incapacitation; and rehabilitation. 18 U.S.C. § 3553(a)(2); *Kimbrough*, 552 U.S. at 101.

In imposing the actual sentence, this Court must consider the factors set forth in 18 U.S.C. §3553(a), which include:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     The need for the sentence imposed -
    (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)     to afford adequate deterrence to criminal conduct;
    (C)     to protect the public from further crimes of the defendant; and
    (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

2

(3)     the kinds of sentences available;
(4)     the advisory guidelines;
(5)     any pertinent policy statements issued by the Sentencing Commission;
(6)     the need to avoid unwarranted sentence disparities; and
(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).

The statute provides that this Court shall, on considering these factors, impose a sentence that is "sufficient, but not greater than necessary to comply with the purposes set forth" in subsection (a)(2): just punishment, deterrence, protection of the public, and rehabilitation of the defendant.  In making this determination, this Court may not presume that the guideline sentence is proper for the defendant before the court. *Nelson v. United States*, 129 S.Ct. 890, 892 (2009). In fashioning an appropriate sentence, this Court is free to reject any guideline based upon policy considerations, specifically when the Sentencing Commission did not fulfill its institutional role of basing the calculated guideline range on its expertise in interpreting sentences, its use of empirical data, and its experience in sentencing. See, *Kimbrough*, 552 U.S. at 109.

In order to facilitate this review, the district court "must adequately explain the chosen sentence . . . to promote the perception of fair sentencing," and be "sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 51 .  Under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of the person convicted of an offense," that this Court may "consider for the purposes of imposing an appropriate sentencing."

3

### C.    *Application of 18 U.S.C. § 3553(a)'s Sentencing Factors*

#### 1.    *Nature and Circumstances of the Offense*

Nineteen year old Mitchell Frost, while a student at the University of Akron, and using the internet network access provided to the University's students and faculty, knowingly transmitted computer programs, codes, commands, and information which caused an interruption and otherwise disruption of vulnerable internet web sites, obtain passwords, account information, and other identifying information, causing a loss in excess of $5000.00. Through the use of the mal-ware, Mitchell Frost also during this time knowingly possessed 15 or more counterfeit or unauthorized access devices, including 136 credit card accounts, PINs, and security codes, and close to 3000 user names and passwords for various computer systems or networks.

#### 2.    *History and Characteristics of Mitchell Frost*

Mitchell Frost is an intelligent young husband, father to his newborn son, Deacon, loving son and brother to his mother and his brother Jake, a trusted friend, confidant, and dependable worker. All of these adjectives describe Mitchell Frost in November of 2010, the mature Mitch Frost who has grown up under the shadow of the criminal prosecution, and has come through the past three years a better, more responsible and caring man in the process.

The above adjectives are only partly applicable to the Mitchell Frost who, as a 19 year old freshman college student, believed that he was hurting no one with his actions in obtaining passwords, credit card information, and access to web sites which disrupted their operation.  At 19, the very talented Mitchell Frost did not know how to channel the knowledge he had in manipulating computer programming and software, did not feel empathy for those individuals who were affected by his network disruptions - the students and faculty who cold not manage their academic business

4

for a considerable time, because of Mitch's actions in using the University's network portal to mount his 'botnet' attack.

Mitchell's immaturity is typical of most 19 year olds - away from a small town for the first time, Mitchell, like a majority of college freshmen, was testing the waters of freedom and adult hood, making political statements and flexing their "muscle." However, instead of bragging about athletic prowess, getting into bar fights or marching in protest with placard in hand, Mitchell flexed his muscles where he was most adept, manipulating software and using his skills as a "computer nerd" to make his political statements. This is not a validation of his actions, but his actions are comprehensible once placed into the context of a 19 year old with the background and upbringing of Mitchell Frost.

Mitch Frost was the first of two children born to Rita Andres Frost and John Frost, in the small town of Bellevue, Ohio.  Soon after Jake Frost, Mitch's brother was born, the Frosts divorced, with the boys staying with their mother.  Raising two little boys was not easy for Rita Andres, and Jake soon learned to rely upon his brother Mitchell, a reliance which endures through the present.

Mitchell was always a smart kid, but was willing to help his friends understand their school work, another trait which Mitchell retained and uses in the present day.  Indeed, there is a letter from a former Stanley Steamer co-worker, who describes the assistance Mitchell provided him, and his appreciation of the understanding and the help. Mitchell was also a member of his high school track team, who would often take newer, shy members under his wing to make them feel at home and part of the team.

Mitchell's family was excited and proud of Mitchell when he was accepted in the university of Akron.  They always believed in his abilities and were anxious to see what Mitchell would make

5

of himself.  Mitchell's expulsion because of this incident was devastating not only to Mitchell, but to all who had used him as an example of a way out of a small town, not with athletics or luck, but on real skills and a known talent.

Mitchell could have returned to Bellevue and fallen into the all too typical cycle of dead end jobs, unwilling to continue the education he had started, or a life of crime.  However, witht eh values that are listed above, Mitchell was not the person to give up on himself, or his family. His brother, Jake, was going through serious substance abuse issues, and Mitchell was there for his mother, and his brother, to help them through a difficult and painful period in their lives. Mitch was also able to obtain employment and enroll in the local Community College, where he will soon gain his degree. His position at Stanley Steamer allowed Mitchell the opportunity to see many different people, in many different walks and stations of life and he was them able, through shedding his small town ideas and biases, to appreciate the differences and appreciate how small acts can affect lives in immeasurable ways.

Maturity for Mitchell was earned through humility, hard work, and responsibility.  During the three years since the incident, Mitchell met his wife Stephanie, and has been blessed with the birth of their first son, Deacon.  Born three week early, Deacon's birth was the final step in the journey of maturation for Mitchell.  Having his son in his arms moments after his birth consummated the changes in Mitchell - the 23 year old father, husband, brother, and son "gets it." Mitchell has learned humility, he is remorseful for his actions, he understands that many people can be hurt by actions such as what he did in 2007.

This is not to say that at 23, Mitchell Frost has it all figured out - he will still make mistakes, still reflect questionable judgment.  Mitch Frost is a work in progress, but the progress that he has

6

made, in growing up and using his talents in positive ways, has made a wold of difference.  He is overwhelmed by the potential of leaving his new son and wife to fend for themselves should he have ot serve a prison term - he knows what kind of life a family has when the father leaves.  This terror was the motivation behind Mitchell trying to make as much money as he could so that his young family would have something to rely upon in his absence.  His wife neither drives, or works, and would be unable to afford child care if she was forced to work to support the family.  The need to support your family is a powerful motivation, and caused Mitchell not to report income made from a web based business he held. He was not being secretive in a militant way, but in a protective, I have to prepare for the worst, kind of way.

Mitchell has submitted a letter, which is included in this filing, which will in his words, explain the process that has been outlined herein.  Mitchell Frost's family and friends have all submitted, for this Court's review, letters which speak in their words, the impact Mitchell Frost has had on their lives, and their requests for consideration of his place in their lives, as this Court fashions an appropriate sentence.

**3.**	***Need for Sentence Imposed to Reflect Seriousness of Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, Protect the Public from Further Crimes, and Provide Mr. Frost with Needed Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner***

At 19 years old, Mitchell Frost likely did not respect the laws which were in place to protect users of online services and websites from malicious attacks. After going though the past three years with the arrest and charges in this case looming, he is humbled.  Mr. Frost respects the law, and a sentence which reflects just punishment for his actions, as well as reflects his maturation process throughout this case, would be appropriate.

### 4.    *The Kinds of Sentences Available*

The kinds of sentences available range from a period of probation to ten years of incarceration.  There is no mandatory term of incarceration required. If a sentence of more than 12 months is imposed, a supervised release term of at least two years is required.

### 5.    *The Kinds of Sentence and the Sentence Range Established for the Offense Under the Advisory Sentencing Guidelines*

Pursuant to the United States Sentencing Guidelines, effective November 1, 2010, and the guideline calculation contained in the plea agreement, Mr. Frost's total guideline offense level is 18, which is then adjusted to a level 15 if reduced three levels for acceptance of responsibility. Having no prior convictions, his Criminal History Category is I. This places him in an advisory guideline range of 18 - 24 months of imprisonment in Zone D of the Sentencing Table.

**D.      *Variance***

      Based upon the history and characteristics of Mitchell Frost, the fact that he was an immature teenager when these crimes were committed, and based upon his extreme remorse, lack of criminal history, his family responsibilities, and the fact that he does not pose a danger to anyone, Mitchell Frosts asks this Court to impose a sentence of probation.  Mr. Frost believes that a probationary sentence would serve the goals of sentencing, provide respect for the law, provide deterrence, and would be sufficient , but not more than necessary, to satisfy the goals of sentencing.

Respectfully submitted,

*s/ Carlos Warner*
CARLOS WARNER
Assistant Federal Defender
Akron Centre Plaza
50 S. Main Street, Ste. 700
Akron, OH 44308
Phone: 330-375-5739/Fax: 330-375-5738
E-mail: debra_migdal@fd.org

9

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2010 a copy of the foregoing Sentencing Memorandum was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

*s/ Carlos Warner*
CARLOS WARNER
Assistant Federal Defender
